# KRIEGER KIM & LEWIN LLP

350 Fifth Avenue, 77th Floor  
New York, NY 10118

Telephone: (212) 390-9550  
www.KKLllp.com

August 29, 2023

By ECF

The Honorable Michael A. Hammer  
United States Magistrate Judge  
District of New Jersey  
Martin Luther King Building & U.S. Courthouse  
50 Walnut Street  
Newark, NJ 07102

  Re: *United States v. Scanlon*, 23 Mag. 10168 (MAH)

Dear Judge Hammer,

  We respectfully submit this letter in further support of our August 18, 2023 motion to modify Mr. Scanlon's bail conditions. In our motion, we asked that: (1) Mr. Scanlon's home detention with electronic monitoring be modified to a curfew without electronic monitoring; and (2) Mr. Scanlon be permitted to use computers with internet access in order to: (a) communicate with counsel and family; (b) order food, goods, and supplies to his home; and (c) work. On August 25, 2023, the government and Pretrial Services submitted responses to our motion, consenting to one of our requested modifications – that Mr. Scanlon be permitted to use connected devices to communicate with counsel and family – but opposing any other modification to the existing conditions. In its opposition, the government argued that the current conditions are the least restrictive means available to prevent Mr. Scanlon from fleeing or committing crimes, based primarily on concerns that Mr. Scanlon poses a "tangible risk of flight" and would use connected devices to "further his criminal scheme and/or flee" or dissipate forfeitable assets.[1] For several reasons, these concerns are not based in reality.

  As an initial matter, the government overstates Mr. Scanlon's incentive to flee. The government contends that despite only having been charged with a failure-to-register offense with a statutory maximum of five years, Mr. Scanlon has a strong incentive to flee because he is also under investigation for other crimes. There is no reason to believe this. The fact remains that Mr. Scanlon has only been charged with a single offense. Furthermore, Mr. Scanlon has been aware of the scope of the government's investigation for years. Never in that time has he indicated an intent to flee. To the contrary, he has lived openly in the United Kingdom – a

---

[1] Apart from expressing concern about its ability to monitor compliance with a curfew absent electronic monitoring, Pretrial Services did not articulate a basis for its opposition. While we strongly believe that Mr. Scanlon poses no risk of flight, we have no objection to the imposition of a curfew with electronic monitoring to the extent it is necessary to address Pretrial's concern.

country that extradites to the United States – and traveled back and forth regularly to the United States. After becoming aware of the government's investigation, Mr. Scanlon hired counsel, through which his companies produced thousands of documents and presented to the government on numerous occasions.[2] Mr. Scanlon has consistently disputed any wrongdoing, as he does today. Having now been charged, his one and only goal is to clear his name through the judicial process. The threat of additional charges, which would be meritless, does not change that calculus in the least.[3]

The government also misconstrues the nature of Mr. Scanlon's business and the supposed danger it poses. In attempting to characterize Mr. Scanlon's business as a fly-by-night operation, the government omits the fact that his business includes a U.K.-regulated e-money institution and a U.S.-regulated money services business, both of which were acquired before Mr. Scanlon became aware of the government's investigation and both of which had effective (and heavily audited) anti-money laundering programs at all relevant times. The existence of the U.S.-regulated entity particularly undercuts the government's assertion of an ongoing danger, since the lack of a U.S.-regulated entity prior to 2019 is the crux of the alleged offense. In its opposition, the government quotes selectively from a text exchange in which Mr. Scanlon acknowledged that his business was moving "fast." However, when viewed in its fuller context, the exchange is much more benign than the government's cherry-picked excerpts suggest:

> *Scanlon: while I may seem like a free-spirited American, I am very conservative with the risk side of thigns*
>
> *Scanlon: I have a massive amount of my own money in this*
>
> *Scanlon:  I would not just shoot and ask questions laer*
>
> *Scanlon: additionally, when I spoke to [Colleague-1] the other day, I told him that we are in a way acting out of fear of being scrutinized*
>
> *Scanlon: I told him that the key thing here is that either we are doing things the right way or we are not*
>
> *Scanlon: I asked what he felt and he said the right way but that our pace is fast*

---

[2] The government's contention that Mr. Scanlon engaged in obstruction is absurd. The gravamen of the government's complaint involves the company's attempts to comply with U.K. data protection law as to data stored in the United Kingdom. At no time did Mr. Scanlon or the company engage in any bad faith attempt to interfere with the government's investigation.

[3] The government incorrectly asserts that Mr. Scanlon is facing a Guidelines range of 151 to 188 months' imprisonment if convicted of the current charge. He is not. The statutory maximum for the charged offense is five years' imprisonment. Regardless of whatever conduct the government believes would support its calculation of 151 to 188 months, the Guidelines cap, as they must, any recommended range at the statutory maximum for the offense of conviction, which is 60 months. *See* U.S.S.G. § 5G1.1(c)(1).

> *Scanlon*: I simply replied saying, that's how we win
>
> *Colleague-2*: If I am safe you are safe mate
>
> *Colleague-2*: I know you are massively vested mate. You are investing big time which I appreciate fully
>
> *Scanlon*: we do things the right way and are fast, our value proposition is even better- ultimately, I will never put anyone in harms way because I would only be putting myself in harms way
>
> *Colleague-2*: Yep. I know
>
> *Scanlon*: in the end, if the regulators come and scrutinize, what is the procedure for that... from my understanding, they tell you what you have done wrong, slap you on the wrist with a fine, and you remediate
>
> *Scanlon*: you fail to remediate, more fines and action
>
> *Scanlon*: continue to be out of compliance, they shut you down

What the government cites as evidence of criminal intent is in fact an unremarkable assertion by an entrepreneur that his business needs to move quickly in order to be competitive, accompanied by a clear statement that the company needs to "do things the right way." The evidence in this case, which includes third-party audits, will show that Mr. Scanlon was committed to compliance with all laws and regulations and invested millions to ensure that his business was compliant.

     The reality is that Mr. Scanlon is neither a flight risk nor a danger to the community. Contrary to the government's argument, there is no plausible way Mr. Scanlon could flee without a passport. Even if it is true that Mr. Scanlon has the theoretical means to leave the United States without a passport, there is nowhere he could realistically go. He could not return to his family and life in the United Kingdom, where he would be arrested and extradited. In fact, he could not live openly in any country that honors U.S.-issued red notices. All that fleeing the United States could possibly accomplish is a life on the run. Nothing in Mr. Scanlon's history suggests he would do such a thing. He has every incentive to fight the case and none at all to flee.

     Furthermore, even assuming that Mr. Scanlon's lack of a U.S. license prior to 2019 was unlawful, as alleged in the complaint, there is no reason to believe that Mr. Scanlon will "further" that conduct in the future. In fact, there is every reason to believe the opposite. According to the government's own allegations, the alleged scheme ended in 2019, which is when Mr. Scanlon's company acquired a U.S.-regulated money services business. Because Mr. Scanlon's company is currently licensed in the United States, it would be factually impossible for him to commit the charged offense – conspiring to operate an unlicensed money transmitting business – today.

August 29, 2023
Page 4 of 4

      The government makes much of the fact that Mr. Scanlon has taken steps towards selling the business.  But what the government neglects to mention is that it was *Mr. Scanlon* who advised the government of the steps being taken to explore a potential sale.  There is no reason to believe Mr. Scanlon intends to dissipate forfeitable assets.  The government's decision to charge Mr. Scanlon has been catastrophic for his business, which has lost operationally critical banking partners and auditors and suffered adverse regulatory actions.  More than 100 hardworking people have now lost their jobs, and the business has lost its regulated revenue streams and millions of dollars in value, in addition to having incurred significant expenditures over the past several years responding to the government's investigation.  Selling the business is likely the only way to preserve value in the now-failing company.  Mr. Scanlon has been and will continue to be transparent with the government about his intentions and has not violated any bail conditions in connection with the potential sale of the company.

      The bail modifications we request are appropriate in light of the sole pending charge against Mr. Scanlon, his compliance to date, and his personal circumstances, which include the anticipated return of his family to the United Kingdom.  Mr. Scanlon is a U.S. citizen with no criminal history who has been charged with an administrative offense with a statutory maximum of five years.  There are no victims of the alleged conduct.  Once his family leaves Florida, Mr. Scanlon will be extremely limited in his ability to acquire groceries, meals, and other household items.  He will also be unable to use connected devices to communicate with counsel or his family.  The proposed modifications will allow Mr. Scanlon to prepare his defense, communicate with family, maintain his household, and pursue employment while still ensuring Mr. Scanlon's presence and the safety of the community.

      Respectfully submitted,
      KRIEGER KIM & LEWIN LLP

By: *[signature]*
      Edward Y. Kim
      Jonathan F. Bolz
      Varun A. Gumaste

cc:    All counsel of record (via ECF)
       Pretrial Services (via email)